Good morning. Good morning. Could I ask you, is this case a fight over about $50,000 or $60,000? It is a, if you're asking about the dollar amount, then that is correct, Your Honor. Does it pay to, I'm just trying to think of the economics, I'm just curious. Does it pay to go through all this over that amount of money? When it's not even clear that if you win, let's put that aside, you're even entitled to a district court having given you that amount. Well, the district court for Morgan Stanley didn't get any amount. No, no, I know. Right. I meant the other side. Your Honor, the issue. All right. I'm going to stop both of you first. Just tell us your name first. Thank you. And then we can launch into it. Thanks. I didn't even get to do my may it please the court. I know. We were worse than usual. Good morning. My name is Brian. Let's start over with the 10 minutes. Thanks. May it please the court. Good morning. My name is Brian Shulman, and I appear on behalf of the appellant, Morgan Stanley. And we are pleased to have you here. Thank you. Go ahead. So now you know what the first question was. Your Honor, in answer to your first question, the issue is more than monetary. The issue concerns the standard for manifest disregard of the law. And frankly, given the number of arbitrations that my client does, we are looking for clarification and resolution and confirmation as to what we believe to be that standard to be. So directly answering your question, this is not a fight over $50,000. It's a fight over what the correct standard of the law is. So it's about principle and the law. Yes. As applied to a particular set of facts which may or may not arise again. Look, you have a right to an appeal. I'm just trying to understand what's really going on here. And I take it you're not interested in mediation? No. And let me respond to your comments about this fight over a specific set of facts. We believe that the legal issues and the errors that were made at the district court have very little to do with the specific underlying facts of this case. This court last year in the BOSAC case most recently acknowledged the well-settled law that arbitrators are under no obligation to give their reasons and explanations for their award and that when they choose not to give those reasons, it is, quote, all but impossible, end quote, to determine that they acted in manifest disregard of the law. In this case, the arbitrators chose not to give the reasons for their award. Yet the district court did what the Ninth Circuit said is all but impossible and found manifest disregard of the law. Well, let me ask you this just as a housekeeping matter. You, I think, are objecting to having you're asking to strike some exhibits. Yes. Weren't those before the arbitrator, though? Your Honor, I was not counsel at the arbitration. All I know is that they were not presented to the district court for the district court's consideration. All right. But if we're deciding if there was a manifest disregard, wouldn't it make sense for us to have a complete set of the records that the arbitrator had? I believe that what makes sense is for this court to have in front of it what was in front of the district court for its decision. Well, but you're asking, you're telling us that it wasn't a manifest disregard. And so if, it would seem to me that we're evaluating what the arbitrator did. Aren't we doing, aren't we making that determination de novo? You absolutely are making this determination de novo. If we're making that determination, don't we want what the arbitrator had? Well, Your Honor, my answer is that under section. The person sitting at your counsel table is going yes. Well, sure. I'm nodding my head yes. Here's the issue, Your Honor. I'm just letting you know the body language that I'm seeing. Well, the issue is that under section 9 of the Federal Arbitration Act, a court must confirm unless there's grounds to vacate or modify. The burden is on the party that files the motion to vacate to show that there's a manifest disregard. The burden is not on the prevailing party responding to a motion to vacate to show that the arbitrators got it right. Morgan Stanley absolutely believes that the arbitrators got it right. They sat through two days of hearings. There were expert witnesses. There were fact witnesses. There were exhibits. There were arguments from counsel. And at the end of those two days, the arbitrators issued a unanimous decision in favor of Morgan Stanley. And the claimant, Seymour Light Investments, filed a motion to vacate. Well, I know all that. But it was their burden to show manifest disregard. I know all that. And here, probably from the standpoint that the district court seemed to think that the particular statute was clear and that so there could be no other result. But I note in the statute there's also some exceptions. And so is your best argument that I think you're well, I'm only speaking for myself. I think you're correct that the arbitrator doesn't have to say everything, what went on. But if it's possible that the arbitrator could have found one of the exceptions and, therefore, it would not be even if the statute were clear, it wouldn't be in manifest disregard. Isn't that true? Correct. In fact, there is a legal presumption under the A.G. Edwards case that we cited in our briefs that under this rule where arbitrators are not required to give the reasons for the decision, that the legal presumption is that the arbitrators made the right call as long as there was a way for them to get to that result. And certainly, one way to get to that result was to determine that one of those exceptions applied. We've also argued in our briefs that there's no private right of action under these qubit asset regulations. So that could have been another reason why the regulators decided to issue their award in favor of Morgan Stanley. The point of this whole process is that we don't know. The district court didn't have any evidence of manifest disregard in its record. And if the claimant, Seymour Light Investments, believed that there was evidence of manifest disregard in the arbitration process, it was that party's obligation to present the evidence to the district court. And Seymour Light Investments submitted a motion to vacate that contained no evidence from the arbitration proceeding. No testimony, no transcripts, no exhibits. So just so that I understand your best argument, then your best argument is they didn't meet their burden, but also that even with the exception that's written in the statute or the issue that you raised on a private right of cause of action, and when you join that with the fact that the arbitrator doesn't have to issue a detailed opinion, that there are reasons that the arbitrator could have come to that conclusion, even if the statute were clear on the part that the district judge felt that it was clear. Absolutely. Because we all have to keep in mind that under the standard for manifest disregard of the law, erroneous interpretations of the law are not enough. There has to be more than that. So it's really not a question of whether or not the arbitrators looked at these regulations and just decided to go one way and the district court interpreted it another way. If that was the standard, then every losing party in an arbitration would be filing a motion to vacate. I understand that. Just because their time is limited. Judge Gold, did you have any questions? No, I have no questions. Do you want to reserve any time for rebuttal? I see that I'm up to two minutes, so unless there's any questions right now, I'll reserve my last two minutes. All right. Thank you. Thank you. Good morning. Good morning, Your Honors. My name is Dale Furnish, and I'm here representing Seymour Light Investments. And with me is Dr. Seymour Light, who is probably barely going to contain himself during this argument. Well, you have to. Okay. Only counsel can speak at the podium, so I think that you speak through your lawyer. Okay. I think we've focused this on some level. So I'm going to start, and since we don't have a lot of time, I'm going to start out with a question that I have. What is the evidence that the arbitrators did not consider the exception to the Cuban Asset Control Regulations at 31 CFR sections 203D2 and D3, which states that transactions that are otherwise null and void and therefore unenforceable are not void if the transfer was, one, not a willful violation, two, that the actor did not have reasonable cause to know of the violation, and three, upon discovery of the possible violation, the actor promptly reported the transaction to the U.S. Treasury? Yes, Your Honor. And I think the factual record shows that from the get-go, Morgan Stanley or MSDW knew that this was a rotten apple, and they spent the next 11 years after doing the transaction trying to sweep it under the rug, make it go away, fool their client, and so on. It would be very, very hard, I would say impossible, for them now to seek shelter in really the only exception that he found or for any court to say, yeah, that happened. Well, how do we know that the arbitrator didn't consider that exception, though? Well, I guess at the bottom line, we can't, because as you know, I know, and Counsel Shulman knows, arbitrators don't give their reasoning because they are urged not to give their reasoning precisely because of that. All right. But then I guess what I'm saying is that just because I'm going to play the devil's advocate with both of you so that we flush these things out, if the bottom line is we don't know that they can't have considered it, then how can this be a manifest disregard? Well, I guess you're correct. And that's an issue that I cannot fully, probably satisfy you or me or Mr. Shulman on. I would say you read that categorical statute, that categorical norm that just says it's null and void. There's no qualifier on it. And then it says, well, it might not be if somebody blundered into it. And I've tried to demonstrate that that's not possible in this case. There was no blundering. There's ample record. There's ample communication from the brokerage that shows they knew about it and did nothing about it. All right. That's the question that I had. So if you want to proceed with your comments, you've answered my question. Okay. I guess the major concern, and perhaps based on the Court's questions, it should not be a concern, is that there's an improper casting of what manifest disregard is in the Ninth Circuit. And there are a series of cases, I think, that lay it out very, very clearly. We've laid it out in our brief. And it just says, essentially, the law has to be presented at the arbitration. It has to be clear. It has to be definite. And then it has to be ignored. Well, I do have another question. I take that back. Because aside from that, what provisions of the Federal Arbitration Act allows the district court to craft its own damage remedy? Also, I do have that question. And I wish I had something I could cite you to specifically. I guess I'd say some sort of common law, common sense idea that the district court looked at this and said, why should I send it back to the arbitration panel when it's imminently clear what the damages are, and all I will do is run the legal interest meter by doing that? Well, Federal courts are generally quite zealous about jurisdiction and what our authority is. And so that had to jump out at me, is what's the authority to do that? Yeah. And I can't find any, honestly. I don't think ‑‑ I mean, I can't find anything clearly against, but I can't find a case or a statute that I can cite to you and say, this is why Judge Merguia did that. Well, I guess while we're asking hard questions, Judge Merguia said that this statute was just so clear that, you know, that your client should prevail. And looked at the statute and looked at the language. But there seems to be a paucity, maybe not even a paucity, an absence of cases interpreting it. So do we have ‑‑ can you give me a case that ‑‑ That interprets the Cuban Assets Control Regulations? Yes. Yes. Well, no. And, again, I can assure the Court, we've looked. But it occurs to me that maybe there are no cases interpreting it, because it is so eminently, categorically clear. Okay. I think those are my questions, Sam. I think you've answered my questions. And what about your right even to have a cause of action based on a violation of those ‑‑ of that? Well, again, that's a troubling issue. I think Seymour Light Investments is not trying to apply the Cuban Assets Control Regulations in a way that would sanction the brokerage. It is essentially calling the Court's, or initially the arbitration panel's, attention to the fact that this is a dead dog. We're not asking you to sanction Morgan Stanley Dean Witter. We're not asking for any punitive damages. We're not asking for any specific right. We're just asking you to nullify the transaction. That's it. But the district court did more than that. It didn't just return the money that he spent, kind of calculated interest and, you know, over a period of time and everything. Well, I would say the interest was returning the money. I mean, they had use of money for 15 years. How did they have use of money? I mean, this was a ‑‑ they purchased ‑‑ they acted as a broker. They didn't ‑‑ they got ‑‑ maybe they got a commission on the transaction. I don't understand. Well, they took in $23,000 from Seymour Light Investments. And they gave it to whoever they purchased the bonds from. Right. And we don't know that they didn't have those bonds in a brokerage stock. When we ask about it, they said they used a weasel word. They said they facilitated the transaction. When we ask, do you have a transaction slip or some record, they couldn't find it. Quite frankly, I find that a little lame. Well, okay, but if we don't know and you're asking to have it set aside, and I think as the appellant has alleged that it's your burden to show a manifest disregard, how does that, you know, what do we do with that? Well, at this point, I guess we've got some issues as to where the burden lies. We've got a decision by a district court that says there was manifest disregard. No, no, no, no, no, no, no, no. That's not okay. That ‑‑ I don't think there's any issue about burden that you prevailed. That's true. But I don't think that there's any issue, even in the Ninth Circuit, surprisingly, that you have the burden to show the manifest disregard if you want to set it aside. Oh, beyond any doubt, Your Honor. Okay. Just so that we're on the same line of page. We had the burden. Okay. There's no question. But I would say at some point the burden shifts to the appellant here. They've got now to carry their burden to overturn the district court's ruling. Yes. That's a different situation. Judge Gould, I've got a question for you. You say they have the burden to overrule what the district court did. Well, they've made their appeal to us. So don't we have to review the issue of manifest disregard de novo? I totally agree with that. See, that they have a burden on that, it seems like does we have to look at the record and say, is it correct or incorrect that there's manifest disregard of the law? That is the way I read your situation. Yes, Your Honor. You do look at it de novo. You do look at the record. Thank you. Thank you. There don't appear to be additional questions, and you have 23 seconds left. Okay. I think I will gracefully retire. All right. Thank you for your argument. Your Honor, may I just say one thing? You need to talk to your lawyer. When you have a lawyer, your lawyer has to be the one. I can't talk to you directly. You have to talk to your lawyer, and if your lawyer, he has 23. Do you want to consult with him for a second to see if there's anything else you want to use your 23 seconds on? Well, why don't you go to the podium if you want to say something, because I can sort of hear the stage whisper here. My client is concerned that he was at the arbitration and that nobody else was, and that he's a resource. But I would simply, and I understand that, and we've talked about that, I would simply say this is an enormously simple case. It's just the kind of case in which manifests disregard. Well, I think what I would say on this is when we review things, always in appellate courts, we have a record before us, and we don't take evidence, but we have the record of what everyone said at those particular issues. And there's also, there's been a motion to add some exhibits. We're going to consider that as well. So it's not, you know, I'm sure that you've conveyed this to your client, but we don't make decisions in the abstract. We look what the law is, and we review the record of all the people that were there. Right. All right. Yes, Your Honor. Thank you. Thank you. Unless there are questions, I just have a few quick points that I would like to address. Any panel questions? There do not appear to be, so you have a little less than two minutes. All right. Manifest disregard, what exactly does it look like? And there are cases to talk about. There aren't very many cases, frankly, where there's a vacature based on manifest disregard. But I wanted to point the Court's attention to an Eighth Circuit opinion, the Lincoln National opinion, which is cited in our briefs. And they give a hypothetical for manifest disregard that I think provides a good foil for what we don't have here. In this Eighth Circuit hypothetical, they say manifest disregard looks like the following. An arbitrator correctly states the law, acknowledges that he is rendering a decision contrary to the law, and says he's doing so because he thinks the law is unfair. Counsel, as Judge Gould, I'm sorry, I can't quite restrain myself on that one. I don't think we have Ninth Circuit precedent that's quite that strong. In fact, I think I wrote an opinion in a case called Comedy Club. And my understanding is that the Ninth Circuit standard, in general, is that the arbitrator has to recognize the law and disregard it. They don't have to say, I recognize I'm disregarding it. Right. That's what the Eighth Circuit said. Right. I'm not aware of any case in our circuit that says that. Well, Judge Gould, I am, of course, familiar with the Comedy Club decision. And as you may have already gleaned in terms of comparing those cases, in Comedy Club, you had an arbitration award where the arbitrator gave a reasoned decision. And the Court of Appeals looked at that reasoned decision, and in particular a case right on point, the Dayton Time Lock case, and said that the arbitrator could not reach the conclusion that it did based on, A, the reasoning in the award, and, B, the well-settled law in that area. We don't have that situation here. The second point I want to make is there's a lot of talk about the Cuban asset regulations, Your Honor and panel. I just want to make it clear, and I want to emphasize that, and this is even in their response brief, there were several tort claims. And so, again, we are left guessing about how the arbitrators reached their decision. And there were a number of affirmative defenses to those tort claims that were addressed, not the least of which was statute of limitations. And so the district court guessed at many things, and one of those was that the decision was based on the two sections out of the Cuban asset regulations. All right. Your time is up. Thank you. This concludes our argument, and this matter will stand submitted.
judges: Korman, Gould, Callahan